WILLIAM FULTON HURST AND WIFE, DORIS CLARK HURST v. TED G. WEST
AND H. HOUSTON GROOME, JR., D/B/A WEST & GROOME, ATTORNEYS AT
LAW; TED G. WEST AND WIFE, CLAUDINE G. WEST, INDIVIDUALLY; H.
HOUSTON GROOME, JR. AND WIFE, MARSHA D. GROOME, INDIVIDUALLY

No. 8019SC367

(Filed 2 December 1980)

**Assignments § 4.2; Contracts § 24— assignment of contract — assignee proper
defendant in breach of contract action**

   In an action for breach of a contract whereby defendants agreed to defend
plaintiff on murder and assault charges, plaintiff agreed to convey all his interest
in certain property, and defendants agreed to collect rents and profits for two
years, then sell the property and give plaintiff the proceeds above $20,000, there
was no merit to plaintiff's contentions that defendants breached the contract by
(1) failing to collect the rents and apply them to the indebtedness on the property
and failing to account for collections and expenditures, and (2) disposing of the
property without adequate consideration, since the parties' contract did not
impose a duty of accounting upon defendants; there was no evidence that defend-
ants did not properly apply the rents received on the property; the parties'
contract was assignable, as it contained no prohibition against assignment and
did not involve an element of personal skill, once criminal charges against
plaintiff were dropped, which would have made it unassignable; under the
assignment contract the assignee agreed to assume all liabilities and responsibil-
ities under the original contract; and plaintiff's cause of action, if one existed at
all, was against the assignee and not defendants.

APPEAL by plaintiffs from *Mills, Judge.* Judgment signed 3
October 1979 in Superior Court, ROWAN County. Heard in the
Court of Appeals 10 October 1980.

Plaintiffs brought this action alleging that defendant law
firm, West & Groome, breached its contract with plaintiff William
Fulton Hurst and charged him excessive attorney fees.

The evidence tends to show the following:

William Hurst and West & Groome entered into the contract
here set out:

.

This agreement made and entered into this *6* day of December, 1973, by and between the Law Firm of West & Groome (hereinafter referred to as Attorneys) and William F. Hurst (hereinafter referred to as Client):

## W I T N E S S E T H:

Whereas Client desires to employ Attorneys to represent him in two (2) charges of murder and one charge of felonious assault now pending in Rowan County arising out of an incident at the property of one Clyde Christy on Nov. 4, 1973, and

Whereas, Attorneys are willing to engage in such employment upon the following terms and conditions, and the parties hereto agree as follows:

### 1.

Attorneys Ted G. West, H. Houston Groome, Jr., and associated attorney, J. D. Hurst, will actively and diligently represent Client at his preliminary hearing, at the trial in Superior Court, if necessary, and if necessary, and desired by Client, through appeals to the North Carolina Court of Appeals and the North Carolina Supreme Court.

### 2.

As compensation, Client will convey to Attorneys all his interest in the property described in Exhibit "A" hereto attached.

### 3.

Attorneys will hold said property, subject to an existing outstanding lease agreement and option on said property for up to two (2) years if leaseholders desire to perform the terms and conditions of said lease and option to purchase, Attorneys will receive all rents paid during the two (2) year period and apply them to debts and mortgages outstanding. Upon the exercise of said option to purchase by leaseholders, Attorneys will withhold as compensation for services rendered, irrespective of whether said cases were disposed of at the preliminary

hearing, or whether trial and appeals were necessary, the sum of twenty thousand dollars ($20,000.00) and remit to Client any excess from the proceeds from sale of said property.

4.

In the event leaseholders do not desire to exercise their lease and option to purchase, Attorneys will sell said property at reasonable market value, and, after payment of all outstanding indebtedness and costs of sale, retain all net proceeds therefrom up to the sum of twenty thousand dollars ($20,000.00), and remit any net sums in excess thereof to Client.

Plaintiffs executed a deed to the property, conveying their one-half interest in a club and motel to defendant law firm pursuant to the contract.

William Hurst was not tried on the charges. Subsequent to the preliminary hearing, the case against him was dismissed. Plaintiffs paid $500 in attorney fees by check.

After two years the option on the property had not been exercised and West & Groome conveyed its interest to Hurst Distributors, Inc., pursuant to a contract of 8 January 1976 between West & Groome and J. D. Hurst, individually, and Hurst Distributors, Inc., of which J. D. Hurst was president. The agreement included the following:

Whereas, Seller and J. D. Hurst, Attorney, in association together, represented one William Hurst on two charges of Murder in the First Degree; and as compensation for said services, Seller received title to one half interest in a tract of realty in Rowan County, N.C., . . . Seller and J. D. Hurst, Attorney, completed their obligations of representation, and said William Hurst has never made any redemption payments under the terms of the contract; and

Whereas, said premises have first, second and third liens upon it exceeding $30,000.00, some of which are in default; and

Whereas, some of the liens enure to the benefit of Hurst

Hurst v. West

Distributors, Inc., and also to J. D. Hurst individually; and

Whereas, said premises are in a run down condition and are not in its present condition, readily marketable, and

Whereas, J. D. Hurst, Attorney, was to receive a portion of the total renumeration provided in said contract;

THEREFORE, in consideration of the above premises and the further consideration of the above premises and the further consideration set out below, the Seller does hereby agree to sell and the Buyer agrees to buy the premises described in said deed upon the following terms and conditions:

1. Seller will convey to Hurst Distributors, Inc., their one half undivided interest in said property, and Hurst Distributors, Inc., assumes and agrees to pay all liens, taxes, and encumbrances against the . . .

2. Both Hurst Distributors, Inc., and J. D. Hurst, individually, will execute a note to Seller payable as follows: $2,000.00 by February 1, 1976, $5,500.00 by April 1, 1976, with interest thereafter in the event of default at 9% per annum.

3. Seller will assign to Purchaser all of their right, title and interest in said property and also the contract between Seller and William Hurst. The Purchaser, by the execution of this agreement, hereby assume all rights, liabilities, and responsibilities under said contract, and by these premises hereby hold harmless Seller, their heirs, and assigns from any and all persons, firms or corporations, from any liability or responsibility under said contract and particularly from any liability or claim of any kind or description William Hurst may now or hereafter make against the Seller for accounting or sale of property.

After the transfer, the property was foreclosed. Proceeds from the foreclosure sale were ordered not to be disbursed until disposition of this case.

On 26 January 1977, plaintiffs filed a complaint alleging, *inter alia:*

14. That the Defendants, WEST & GROOME, breached the sealed contract which was entered on December 6, 1973, and heretofore incorporated by reference as Exhibit A, by failing to collect the rents as agreed in the contract, by failing to sell the property in a reasonable commercial manner at a reasonable market value, and by failing to make an accounting to the said WILLIAM FULTON HURST concerning the disposition of the property.

15. That the Plaintiff was charged with two (2) counts of murder arising out of an incident at the property of one CLYDE CHRISTY on November 4, 1973, and that said charges were ill founded and were dismissed after the preliminary hearing. That the said sum of Twenty Thousand Dollars ($20,000) attorney fee is an unreasonable and unconscionable amount to charge for such services.

In the same complaint plaintiffs made allegations against J. D. Hurst and Hurst Distributors, Inc. Summary judgment was granted those defendants on 10 November 1977.

Defendants filed a counterclaim for recovery of attorney fees for representing William Hurst on the murder and assault charges. On 27 November 1978 Judge Walker dismissed counterclaim.

The cause was heard by Judge Mills and a duly empaneled jury. At the close of plaintiffs' evidence, defendants moved for a directed verdict. The motion was granted.

From the order dismissing the action with prejudice, plaintiffs appeal.

Other facts necesary for decision are set out below.

*James L. Roberts for plaintiff appellants.*

*West, Groome and Correll, by Ted G. West, H. Houston Groome, Jr., and Edward H. Blair, Jr., for defendant appellees.*

MARTIN (Harry C.), Judge.

Plaintiffs' primary assignments of error relate to the trial court's refusal to submit to the jury the issues tendered by plaintiffs

and granting defendants' motion for directed verdict. After careful review of the record on appeal, we conclude that the motion for directed verdict was properly granted.

At the close of plaintiffs' evidence, after the jury was out, the following dialogue took place between counsel for the parties and Judge Mills:

MR. ROBERTS: In regards to the Counterclaim, if you will look at the Exhibit, I believe it's Seven, wherein they made agreement with J. D. Hurst and said they conveyed all their rights, title and interest for the Seventy-Five Hundred Dollars.

THE COURT: Okay, I understand what your motion is.

MR. ROBERTS: As a result of that they would not be the proper party to being [sic] the motion. J. D. Hurst would be proper party and he's not here and not in the lawsuit and for that reason, it could not be submitted.

MR. GROOME: Your Honor, under Rule 41(b) we move for a dismissal of Plaintiff's case in its entirety and would like to direct your attention for the Complaint in the prayer for relief, paragraph Ten of Plaintiff's Complaint. [That the Defendant, J. D. Hurst, caused the property described in Exhibit B to be fraudulently conveyed in the name of HURST DISTRIBUTING COMPANY, INC. . . .] (Argues Motion).

(Attorneys for both sides argue their contentions of law to the Court.)

THE COURT: The Court will grant your motion to dismiss at the close of the plaintiff's evidence and the Court will also find on Mr. Roberts' motion that the Court has improvidently reinstated your claim that for the same reasons found by Judge Collier on the Dismissal of those Counterclaims for attorneys fees. The Court will reaffirm that and adopt that position and find that I improvidently should not have allowed you to reassert that claim based on that finding by Judge Collier. Your Counterclaim is dismissed on those bases and your claim is dismissed on that basis.

Although it is not contained in the record, it is apparent that Judge Mills had reinstated defendants' counterclaim for attorney fees and later reconsidered that reinstatement because their claim had been effectively assigned to J. D. Hurst and Hurst Distributors, Inc. under the contract of 8 January 1976. For the same reason, plaintiffs' claim against defendants was dismissed.

Plaintiffs contend that defendants breached the contract by disposing of the property without adequate consideration and by failing to collect the rents and apply the same to the indebtedness on the property and to account for collections and expenditures. We note that the contract set out above did not impose a duty of accounting upon defendants. Plaintiffs' evidence includes testimony by Donald Weinhold, an attorney who formerly represented William Hurst regarding the property in question. Weinhold's testimony was that he requested and received an accounting of the rents during the time defendants had possession. We are unable to find any evidence in the record that defendants did not properly apply any rents received on the property. The issue remaining, then, is whether defendants breached their agreement to sell the property at its reasonable market value and remit any amount in excess of $20,000 plus costs to plaintiff William Hurst by conveying the property, subject to the contract, to Hurst Distributors, Inc. We hold that the contract was assignable and therefore defendants committed no breach.

The general rule is that contracts may be assigned. "The principle is firmly established in this jurisdiction that, unless expressly prohibited by statute or in contravention of some principle of public policy, all ordinary business contracts are assignable, and that a contract for money to become due in the future may be assigned." *Bank v. Jackson*, 214 N.C. 582, 585-86, 200 S.E. 444, 446 (1939). *Accord, Lipe v. Bank*, 236 N.C. 328, 72 S.E. 2d 759 (1952); *Horne-Wilson, Inc. v. Wiggins Bros., Inc.*, 203 N.C. 85, 164 S.E. 365 (1932).

In *Lipe, supra* at 331, 72 S.E. 2d at 761, the Supreme Court stated:

A valid assignment may be made by any contract between the assignor and the assignee which manifests an intention to make the assignee the present owner of the debt. [Citations omitted.] The assignment operates as a binding transfer of the title to the debt as between the

assignor and the assignee regardless of whether notice of the transfer is given to the debtor.

Exceptions to the rule that contracts are freely assignable are when the contract expressly provides that it is not assignable, *Edgewood Knoll Apartments v. Braswell,* 239 N.C. 560, 80 S.E. 2d 653 (1954), or when performance of some term of the contract involves an element of personal skill or credit. *Boney, Insurance Comr. v. Insurance Co.,* 213 N.C. 563, 197 S.E. 112 (1938). *See also Oil Co. v. Furlonge,* 257 N.C. 388, 126 S.E.2d 167 (1962). "Whether or not a contractual duty requires personal performance by a specific individual can be determined only by interpreting the words used in the light of experience." 4 A. Corbin, Contracts § 866, 455 (1951).

The contract between William F. Hurst and West & Groome contained no express prohibition against assignment. Although the duty of defendant attorneys to defend plaintiff William Hurst on the charges then pending against him involved an element of personal skill and would not have been assignable to a third party, those obligations were fulfilled and discharged when the criminal charges against Hurst were dismissed. The remaining obligation of defendants under the contract, that they sell the property at a reasonable market value if the option to purchase were not exercised, was not personal in nature, as such a performance can be rendered with equal effectiveness by an assignee of the contract. Thus it is clear that no breach occurred merely by West & Groome's assignment of the contract to J. D. Hurst and Hurst Distributors, Inc.

Traditionally the assignment of a contract did not operate to cast upon the assignee the duties and obligations or the liabilities of the contract if the assignee did not assume such liabilities. *Koppers Co, Inc. v. Chemical Corp.,* 9 N.C. App. 118, 175 S.E.2d 761 (1970). But in *Rose v. Materials Co.,* 282 N.C. 643, 194 S.E.2d 521, 67 A.L.R. 3d 1 (1973), our Supreme Court held that unless a contrary intention is apparent, an assignee under a general assignment of an executory bilateral contract becomes the delegatee of the assignor's duties and impliedly promises to perform them. The Court adopted and reaffirmed as the more reasonable rule:

"The assignment on its face indicates an intent to do more than simply to transfer the benefits assured by the con-

tract. It purports to transfer the contract as a whole, and since the contract is made up of both benefits and burdens both must be intended to be included. It is true the assignor has power only to delegate and not to transfer the performance of duties as against the other party to the contract assigned, but this does not prevent the assignor and the assignee from shifting the burden of performance as between themselves. Moreover common sense tells us that the assignor, after making such an assignment, usually regards himself as no longer a party to the contract. He does not and, from the nature of things, cannot easily keep in touch with what is being done in order properly to protect his interests if he alone is to be liable for non-performance. Not infrequently the assignor makes an assignment because he is unable to perform further or because he intends to disable himself for further performance. The assignee on the other hand understands that he is to carry out the terms of the contract, as is shown by the fact that he usually does . . . ."

*Id.* at 662, 194 S.E.2d at 534.

In the present case, J. D. Hurst and Hurst Distributors, Inc. expressly agreed to assume all liabilities and responsibilities under the original contract and to hold defendants harmless "from any liability or responsibility under said contract and particularly from any liability or claim of any kind or description William Hurst may now or hereafter make against the Seller [defendants] for accounting or sale of property." J. D. Hurst and Hurst Distributors, Inc., as assignees of the contract, could take by transfer only what rights and interests the assignor had at the time of the assignment, *Holloway v. Bank*, 211 N.C. 227, 189 S.E. 789 (1937), and took subject to any setoffs and defenses available to plaintiffs against the assignor. *Amusement Co. v. Tarkington*, 247 N.C. 444, 101 S.E.2d 398 (1958). The assumption of the duties under the contract gives the other party new and additional security. *Brown v. Construction Co.*, 236 N.C. 462, 73 S.E.2d 147 (1952). The assignor is then in substantially the position of a surety. 4 A Corbin, *supra* § 866. If a breach of the contract in question was committed, it was committed by J. D. Hurst and Hurst Distributors, Inc. As assignees, they were the real parties in interest. *Morton v. Thornton*, 259 N.C. 697, 131 S.E.2d 378 (1963); *Trust Co. v. Williams*, 201 N.C. 464, 160 S.E. 484 (1931).

Hurst v. West

Plaintiffs had the right to bring suit against the assignees of the contract. This they did; and summary judgment was entered against them. No appeal from that order is now before us. We note that the subsequent foreclosure precluded a private sale at a reasonable market value.

Because plaintiffs' evidence did not establish the necessary elements of breach of contract, we hold that the directed verdict in favor of defendants was proper. The assignment of error is overruled.

Plaintiffs' other assignment of error deals with the exclusion of testimony offered by plaintiffs' witnesses. Most of that testimony dealt with opinions as to the value of the property in question at the time it was tranferred by defendants to J. D. Hurst and Hurst Distributors, Inc. As we have found on other grounds that there was no breach of the contract, the exclusion of such testimony was not erroneous.

The other testimony that plaintiffs contend was improperly excluded dealt with customary or average attorney fees in capital cases. It appears, although the record and briefs are far from illuminating on this issue, that plaintiffs are no longer pursuing their claim as to excessive attorney fees because of the dismissal of the counterclaim for recovery of such, and because of defendants' failure to perfect their appeal on this issue. In any case, there is no evidence that such fees were unreasonable. The record does not show what answers the witness would have given to the questions regarding this issue; therefore exclusion of the testimony cannot be held to be prejudicial. *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E.2d 9 (1963); *Abbitt v. Bartlett*, 252 N.C. 40, 112 S.E.2d 751 (1960); *Board of Education v. Mann*, 250 N.C. 493, 109 S.E.2d 175 (1959).

We find no merit in plaintiffs' assignments of error.

No error.

Judges ARNOLD and HILL concur.